**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

_____

|  |  |  |
|---|---|---|
| EDGAR BALTAZAR GARCIA,<br>Petitioner | : : : : : : : : : : : : : : : | 1:13-cv-723 - MAC - KFG |
| -v- | | |
| UNITED STATES OF AMERICA,<br>Respondent | | |

_____

### PETITIONER EDGAR BALTAZAR GARCIA'S MOTION FOR LEAVE TO CONDUCT DISCOVERY AND SUPPORTING MEMORANDUM

**I.   MOTION**

Movant, EDGAR BALTAZAR GARCIA, by undersigned counsel, respectfully moves the Court to compel certain discovery, as set forth in detail below. Discovery sought is authorized by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Habeas Rule 6"). The discovery Mr. Garcia seeks, including the production of records and evidence, is necessary for the presentation of the constitutional claims raised in his 28 U.S.C. § 2255 motion. The requested discovery is essential to guarantee Mr. Garcia a full and fair opportunity to develop his petition under 28 U.S.C. § 2255 and to ensure that this Court reviews and resolves Mr. Garcia's claims for relief in light of a fully developed factual record.

1

## II. MEMORANDUM OF LAW

Under Habeas Rule 6(a), "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."[1] "Good cause" for discovery in habeas proceedings exists "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997) (*quoting Harris*, 394 U.S. at 300). The policies favoring discovery are even stronger in capital cases than in non-capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland v. Scott*, 512 U.S. 849, 855 (1994).

For the reasons discussed below, there exists good cause to grant Mr. Garcia leave to obtain the discovery he seeks. Specifically, Mr. Garcia seeks subpoenas to compel the Federal Bureau of Prisons ("BOP"), the Federal Bureau of Investigation ("FBI"), and other federal investigative agencies to produce the materials detailed in the body of this motion. Such discovery is indispensable to the development of the material facts needed for the consideration and accurate resolution of the claims for relief in Mr. Garcia's forthcoming § 2255 petition.

---

[1] Rule 6 is silent as to whether discovery requests are permitted prior to the filing of a petition under 28 U.S.C. § 2255. Some courts have ruled such discovery improper. *See, e.g., Calderon v. United States District Court for the Northern District of California*, 98 F.3d 1102 (9th Cir. 1996). In light of the Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005) (prohibiting amendment of a post-conviction petition to introduce new claims subsequent to the one-year statute of limitations in AEDPA), however, restricting discovery to the post-petition period would prevent the timely discovery of new, relevant claims.

2

### A. Federal Bureau of Prisons

#### a. Need for Discovery from BOP

In his pending petition, Mr. Garcia anticipates raising claims related to the absence of critical BOP records at trial. Trial counsel obtained no BOP documents independent of what was provided in discovery; they lacked access even to Mr. Garcia's "central file."

Movant seeks the following groups of BOP documents: (1) all documents specific to Mr. Garcia (including his central file), (2) all documents specific to the investigation of the charged offense, (3) documentation of violence and threat in the institutions where Mr. Garcia was incarcerated prior to the charged offense, (4) documents regarding the operations of the Texas Syndicate at BOP institutions where Mr. Garcia was housed, (5) documents regarding BOP failures in security, and attempts to improve said security, at all BOP facilities, and (6) documents addressing the abilty of the BOP to hold Mr. Garcia safely if he had been sentenced to life. Mr. Garcia also requests documents on Gabriel Rhone and Baltazar Garcia Villalba, Mr. Garcia's father.

The relevance and importance of these documents are manifold. Regarding BOP documents specific to Mr. Garcia, the defense anticipates that these documents will provide a full picture of Mr. Garcia's time in the BOP (including mental health, education, etc.), and thus would have enabled trial counsel to challenge the government's argument during the penalty phase that Mr. Garcia presented a future danger to the prison community, necessitating his execution. It is also anticipated that these documents would have supported a claim in mitigation that Mr. Garcia's mental health and functioning were affected by and deteriorated in the BOP

setting.

Regarding documents specific to the investigation of the offense, it is anticipated that these documents contain significant information that was not available to trial counsel. While this case was not a "whodunit", a number of issues regarding the offense were highly disputed at trial including whether or not Mr. Rhone made threats against Mr. Garcia and Mr. Snarr, the credibility of any threats Mr. Rhone might have made against Mr. Garcia and Mr. Snarr, and Mr. Rhone's possession of knives and shanks. Only five out of twelve jurors acknowledged Mr. Rhone's threats against Mr. Garcia's life as a mitigating factor; other jurors believed the Government's adamant argument at trial that the threats did not occur. Movant expects that further documentation of the investigation of the offense will corroborate the evidence that exists regarding Mr. Rhone's threats, the credibility of those threats, and his possession of shanks. Movant also anticipates that these documents will offer further evidence of the contribution of the BOP to the incident via mishaps, mistakes and missed opportunities to prevent the violence. This issue was underexplored at trial (because of lack of full documentation) but according to the jury verdict form resonated with at least some members of the jury. A fuller picture of these issues, supported by full documentation, would likely have swayed the jury.

The defense also requests all correctional and medical BOP files on Mr. Rhone. It is anticipated that these files contain information supporting the claim that Mr. Rhone made threats against Mr. Garcia and Mr. Snarr, that Mr. Rhone's threats were credible and consistent with his past behavior, and that Mr. Rhone possessed a shank around the time of the offense.

The defense also requests all correctional files on Mr. Baltazar Garcia Villalba, Mr. Edgar Garcia's father. Mr. Garcia's father was characterized at trial as a drug trafficker who

4

played a substantial role in drawing Mr. Garcia into a life of drugs and crime. This story was unsupported, however, by direct testimony or documentation. It is anticipated that these records regarding Mr. Garcia's father will paint a fuller and more mitigating picture of this aspect of Mr. Garcia's life.

Upon information and belief, available BOP documentation on institutional violence at USP Beaumont and other BOP facilities where Mr. Garcia was incarcerated supports the argument in mitigation (not made at trial) that Mr. Garcia was exposed to chronic violence, threat and risk at Beaumont SHU and other BOP institutions; that the BOP facilitated that violence and sense of threat by allowing and encouraging contact and physical violence between, inter alia, separatees and members of different cars or gangs; and that this exposure negatively affected Mr. Garcia's mental health and functioning. Under 18 U.S.C. § 3592(a)(8), in determining whether a death sentence is justified, the finder of fact "shall consider … any other circumstance of the offense that mitigate[s] against imposition of the death sentence." The pervasive violent conditions at USP Beaumont were notorious, and extended far beyond the crime for which Mr. Garcia is on death row. Public records confirm that USP Beaumont was so dangerous and unmanageable an institution that its maximum security prisoners were removed and the prison reclassified to a medium security institution in 2008. The conditions at Beaumont and at the other institutions where Mr. Garcia was housed, if presented by effective trial counsel, would have been independently mitigating and also have supported Mr. Garcia's mental health claim. Moreover, this evidence of chronic violence and lack of security would have supported the defense argument that contrary to the Government's adamant claim at trial, Mr. Rhone's threats to kill Mr. Garcia were entirely credible.

5

The Government argued in aggravation that Mr. Garcia was a member of the Texas Syndicate, and elicited testimony that a number of his disciplinary charges were gang related. This evidence was presented as exclusively aggravating. The BOP regularly investigates the Texas Syndicate and its recruitment, internal treatment of its members, and interactions with others. It is anticipated that available documentation of such investigation could have been used by effective trial counsel to mitigate Mr. Garcia's alleged involvement in the Texas Syndicate, his prior offenses allegedly related to the Texas Syndicate, and the charged offense.

Movant also seeks documents concerning BOP failures in security, and attempts to improve said security, as relevant to the issue of BOP contribution to the offense, discussed above. These documents will provide evidence of systematic rather than incidental failures in security and of BOP consciousness of its own failures in this area.

The Government argued in aggravation that Mr. Garcia could not be safely held in the BOP, as he would necessarily "program out" of the highest security facility USP-ADMAX (ADX) "in ten years or less." The documentation the defense seeks to access in discovery regarding ADX programming, placement and transfer and the history of placement of BOP inmates found guilty of murder at BOP institutions shows this statement to be untrue.

In sum, BOP documentation regarding the 2007 crime and Mr. Garcia, as well as other materials regarding USP Beaumont and other BOP facilities in the custody of the Bureau of Prisons, is relevant to multiple claims that Mr. Garcia will assert in his pending petition. Mr Garcia has made multiple requests to the BOP under the Freedom of Information Act for this information. Mr. Garcia has requested BOP records via FOIA requests on June 13, 2013, June 19, 2013, and September 5, 2014. Defense counsel have followed-up with phone calls and emails

multiple times since then, but  the Bureau of Prisons has of this point only produced one incomplete set of medical and psychological documents on Mr. Garcia, received on January 23, 2015.

### b.  Specific Materials Requested from the BOP

What follows is a specific list of materials requested from the BOP:

- any and all files and documents maintained or stored by the Federal Bureau of Prisons concerning Mr. Edgar Garcia, including but not limited to Mr. Garcia's complete Central File, incarceration records, probation records, court records, disciplinary records, After-Action reviews and reports (including reports by the After-Action Review Team), Board of Inquiry reports, Office of the Inspector General (OIG) reports, video or audio recordings, daily logbooks, inmate profile, Posted Picture File, designation as a Disruptive Group Member, designation as a member of a Security Threat Group, academic records, progress reports, achievements, counseling records, psychological or psychiatric evaluations, classification/placement recommendations, and any other types of records contained in Mr. Garcia's file.

- any and all medical records maintained or stored by the Federal Bureau of Prisons concerning Mr. Garcia., including but not limited to Bureau Electronic Medical Records System (BEMR) and Bureau Pharmacy System (BEMRx) entries and file, Psychology Data System (PDS) entries and files, intake notes, progress reports, nurses' notes, physicians' orders, prescription information, X-Rays, diagrams, testing, evaluations,

7

psychiatric or psychological evaluations and/or counseling, raw data from psychological testing, referrals to other doctors, waiver or consent forms, discharge reports, substance abuse counseling notes, and any other records contained in Mr. Garcia's files. As noted above, undersigned counsel did just days ago receive a set of BOP medical documents on Mr. Garcia in response to a FOIA request, but these materials appear to be incomplete.

- any and all files and documents maintained or stored by the Federal Bureau of Prisons concerning Mr. Gabriel Rhone, including but not limited to Mr. Rhone's complete Central File, incarceration records, probation records, court records, disciplinary records, After-Action reviews and reports (including reports by the After-Action Review Team), Board of Inquiry reports, Office of the Inspector General (OIG) reports, video or audio recordings, daily logbooks, inmate profile, Posted Picture File, designation as a Disruptive Group Member, designation as a member of a Security Threat Group, academic records, progress reports, achievements, counseling records, psychological or psychiatric evaluations, classification/placement recommendations, and any other types of records contained in Mr. Rhone's file.

- any and all files and documents maintained or stored by the Federal Bureau of Prisons concerning Mr. Baltazar Garcia Vallalba (Edgar Garcia's father), including but not limited to Mr. Garcia's complete Central File, incarceration records, probation records, court records, disciplinary records, After-Action reviews and reports (including reports by the After-Action Review Team), Board of Inquiry reports, Office of the Inspector General (OIG) reports, video or audio recordings, daily logbooks, inmate profile, Posted

8

Picture File, designation as a Disruptive Group Member, designation as a member of a Security Threat Group, academic records, progress reports, achievements, counseling records, psychological or psychiatric evaluations, classification/placement recommendations, and any other types of records contained in Mr. Garcia's file.

- any and all files and documents maintained or stored by the Federal Bureau of Prisons concerning the charged incident in this case, including Reports of Incident (OIAOOOI-0619), Responding staff memorandum, institution incident time line, After Action Review Report(s), and any Bureau of Prison referrals to the Office of the Inspector General of the Department of Justice or to the local jurisdictional Office of the Federal Bureau of Investigations regarding the above referenced incident.

- any and all files and documents maintained or stored by the Federal Bureau of Prisons concerning all violent acts, including killings, assaults, possession of weapons, and fighting, during the years 2002 – 2008, at at all the USP facilities where Mr. Garcia has been incarcerated including, inter alia, USP Beaumont, USP Lee, USP Atlanta and USP Marion, including information specific to violent assaults within Secure Housing Units.

- any and all files and documents maintained or stored by the Federal Bureau of Prisons concerning BOP failures in security, and attempts to improve said security, at all BOP facilities, during the years 2002 – 2008, including information regarding the Mission Critical Post Initiative, the U.S. General Accountability Office's February 2009 Report to Congressional Requesters titled "Bureau of Prisons: Written Policies on Lateral Transfers

and Assessment of Temporary Assignments Needed," and documents regarding staffing percentages and funding percentages of staff and correctional services for the years 2002-2008;

- any and all files and documents maintained or stored by the Federal Bureau of Prisons concerning the ability of USP-ADMAX (ADX) to safely and securely house BOP inmates who have been convicted of committing a murder in prison, and the institutional history of BOP inmates convicted of an inmate killing. This information would include documentation of these inmates' disciplinary history pre and post homicide, including specifically periods of incarceration in ADX; documentation memorializing the chronological housing history for these inmates both pre- and post prison homicide, including time at ADX; and documentation of BOP decision-making regarding whether to transfer individual inmates out of the control unit or out of ADX general population, or to continue to incarcerate them within these programs. It would also include BOP policies related to ADX such as policies on placement into, advancement through, and transfer out of ADX, the Control Unit at ADX and the ADX stepdown program, and general reports on ADX such as prison social climate surveys, institution character profile reports, and any reviews and accreditation.

- any and all files and documents maintained or stored by the Federal Bureau of Prisons concerning the operations of the Texas Syndicate at institutions where Mr. Garcia was incarcerated.

10

### B.   Federal Bureau of Investigation and other Federal Investigative Agencies

#### a.   Need for Discovery from the FBI and other Federal Investigative Agencies

The FBI functioned as an investigative agency in relation to the charged offense and in relation to a number of Mr. Garcia's prior offenses introduced by the Government in aggravation at trial. Movant is requesting the FBI (and other federal investigative agency) files on the 2007 offense as well as on Mr. Garcia's prior offenses. Movant also requests FBI files on Mr. Rhone.

Regarding the 2007 offense, the defense anticipates that, like the BOP investigative files, the FBI file will contain, inter alia, evidence of Mr. Rhone's threats against Mr. Garcia and Mr. Snarr, of the credibility of Mr. Rhone's threats against Mr. Garcia and Mr. Snarr, of Mr. Rhone's possession of a shank prior to and at the time of the offense, of opportunities for the BOP to have prevented the incident, and of the contribution of other BOP inmates to the events that day. The relevance of this information is explained in the prior section.

Regarding the prior offenses introduced in aggravation, the defense anticipates that the FBI, ATF, DEA and IRS (Criminal Division) files on these offenses will contain mitigating evidence, or point to mitigating evidence, that was not discovered by trial counsel or presented at trial. Trial counsel acquired no documents on these priors that were not supplied by the Government in discovery. All of these agencies were involved in the investigation of at least one of Mr. Garcia's alleged prior offenses introduced in aggravation at trial.

Defense counsel also anticipates that FBI records on Gabriel Rhone will contain similar information regarding the charged offense, but also more general information supporting the

11

claim that Mr. Rhone's threats were credible and consistent with his past behavior.

The defense also requests all FBI, ATF and DEA files on Mr. Baltazar Garcia Villalba, Mr. Garcia's father. Mr. Garcia's father was characterized at trial as a drug trafficker who played a substantial role in drawing Mr. Garcia into a life of drugs and crime; he was indicted as a co-defendant on the RICO charge that resulted in Mr. Garcia's federal incarceration. This story, however, was narrowly presented and unsupported by direct testimony or documentation. It is anticipated that these records regarding Mr. Garcia's father will paint a fuller and more mitigating picture of this aspect of Mr. Garcia's life.

Mr Garcia has made multiple requests to the FBI and other federal investigative agencies under the Freedom of Information Act for this information. Mr. Garcia has requested documents from these agencies via FOIA requests on June 11, 2014, September 18, 2014, and January 7, 2015. A heavily redacted set of FBI documents was received on October 31, 2014 and November 25, 2014, relevant only to Mr. Garcia's 2002 RICO conviction. Almost all factual information is redacted from these documents, rendering them virtually useless for purposes of understanding the factual underpinning of the charges. The FBI has alerted defense counsel that only one set of documents will be released per month and that additional documents are scheduled to be released to the defense team in future months, including after the filing deadline in this case. No records have been received from any other federal investigative agency despite specific FOIA requests made to the DEA, ATF and IRS (Criminal Division). Defense counsel have followed-up with phone calls and emails multiple times to these agencies.

**b. Materials Requested from the FBI and other Federal Investigative Agencies**

What follows is a specific list of materials requested from the BOP:

- any and all files and documents maintained or stored by the Federal Bureau of Investigation concerning the charged incident in this case and its investigation

- any and all files and documents maintained or stored by the Federal Bureau of Investigation concerning Edgar Garcia

- any and all files and documents maintained or stored by the Federal Bureau of Investigation concerning Gabriel Rhone

- any and all files and documents maintained or stored by the Federal Bureau of Investigation concerning Baltazar Garcia Villalba (Edgar Garcia's father)

- any and all files and documents maintained or stored by the Internal Revenue Services (criminal division) concerning Edgar Garcia

- any and all files and documents maintained or stored by the Drug Enforcement Administration concerning Edgar Garcia

- any and all files and documents maintained or stored by the Drug Enforcement Administration concerning Baltazar Garcia Villalba (Edgar Garcia's father)

- any and all files and documents maintained or stored by the Bureau of Alcohol, Tobacco, Firearms and Explosives oncerning Edgar Garcia

- any and all files and documents maintained or stored by the Bureau of Alcohol, Tobacco, Firearms and Explosives concerning Baltazar Garcia Villalba (Edgar Garcia's father)

**CONCLUSION**

Given the gravity of this capital case, Edgar Garcia requests leave to conduct the

13

requested discovery, including production of records and evidence, which will enable him to fully investigate, develop, and present any and all relevant constitutional claims including, but not limited to, prosecutorial misconduct and ineffective assistance of counsel. There is "good cause" for this discovery. By making this request at this time, Mr. Garcia does not waive his right to seek additional discovery in the future, in the form of further requests for access to relevant documents and records, as well as depositions of relevant witnesses that come to light through the disclosure of such relevant documents and records.

This Court should also allow Mr. Garcia to issue subpoenas to the relevant authorities for the production of the requested evidence. If the Government alleges that any of the information Mr. Garcia seeks via discovery is privileged and/or constitutes attorney work product, he requests the Court to require the Government to produce such information for in camera inspection and review by the Court. If the Government submits any such material, and the Court nevertheless refuses to allow Mr. Garcia and/or his counsel access to such material, Mr. Garcia then further requests the Court to copy the undisclosed material and maintain it in the record under seal for purposes of any potential subsequent appeal in this proceeding.

WHEREFORE, for all the reasons set forth above, Mr. Garcia respectfully requests that this Court grant Mr. Garcia the requested discovery and other relief set forth in this motion.

Dated: January 27, 2015

Respectfully Submitted,


*/s/ Christine Lehmann*

Christine Lehmann
Louisiana Capital Assistance Center

14

636 Baronne Street
New Orleans, LA 70113
(504) 558-9867
(504) 558-0378 (fax)
Louisiana Bar #28122

/s/ *Jason D. Hawkins*

Jason D. Hawkins
Federal Public Defender
Northern District of Texas
525 South Griffin Street, Suite 629
Dallas, Texas 75202
(214) 767-2746
(214) 767-2886 (fax)
Texas Bar No. 00795763


Dated: January 27, 2015


## CERTIFICATE OF SERVICE

This is to certify that, on this January 27, 2015, I served a true and correct copy of the

foregoing pleading by electronic mail and first class mail on opposing counsel

/s/ *Christine Lehmann*


## CERTIFICATE OF CONFERENCE

This is to certify that undersigned counsel conferred with Joseph Batte, Counsel for the

Government, and that he does oppose this motion.


/s/ *Christine Lehmann*


15