UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| EDGAR BALTAZAR GARCIA | ) | |
| MARK ISSAC SNARR, | ) | |
| *Petitioner*, | ) | |
| | ) | CASE NO. 1:13-CV-723 |
| v. | ) | CASE NO. 1:13-CV-724 |
| | ) | CRIMINAL No. 1:09-CR-15 |
| UNITED STATES OF AMERICA, | ) | |
| *Respondent*. | ) | |
| | ) | |

**JOINT MOTION TO TEMPORARILY SUSPEND AND TOLL FOR ALL PURPOSES FEDERAL RULE 15 AND REPLY DEADLINES IN RESPONSE TO THE GLOBAL PANDEMIC AND STATE OF EMERGENCY CAUSED BY THE CORONAVIRUS COVID-19**

**COME NOW** Petitioners, Edgar Baltazar Garcia and Mark Issac Snarr, by and through their undersigned counsel, and hereby submit this joint motion to temporarily suspend and toll for all purposes statutory, rules of court, and scheduling deadlines due to the global pandemic caused by coronavirus COVID-19. Support for the motion is stated herein.

1.      The government's March 25, 2020 filings of its approximately 300-page Answers have triggered for Mr. Garcia and Mr. Snarr a 21 day deadline for filing Rule 15(a)[1] amended pleading and a May 29, 2020 deadline for filing replies.[2]    Neither petitioner can possibly meet these deadlines in any effective manner in light of the impact of the current state of emergency and global pandemic.

2.      Suspension of the deadlines established by Rule 15 and the current scheduling

---

[1]  Federal Rule of Civil Procedure 15(a) ("A party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading"); *United States v. Zosimo Reyes Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (Rule 15 applies in § 2255 proceedings).
[2]  *See Garcia*, 13-723 Doc 105; *Snarr*, 13-724 Doc 80.

1

orders is requested until the Court can determine that the parties are able to safely and effectively perform their representation in this death penalty case.

**Procedural history and current deadlines**

3.       Mr. Garcia and Mr. Snarr filed their 28 U.S.C.S. § 2255 motions in February, 2015.[3] This resulted in an initial May 2015 deadline for filing an Answer on the part of the government.[4]

4.       Ultimately, the government's time to file an Answer to the §2255 pleadings was extended to March 31, 2020.[5]

5.       On March 25, 2020, counsel for petitioners reached out to the government to propose a tolling of the briefing schedule due to unique restrictions imposed on counsel by health and governmental authorities in a national effort to reduce the impact of the spread of the coronavirus COVID-19.   However, simultaneously, the government was in the process of filing its answer to the § 2255 motions filed by Mr. Garcia and Mr. Snarr.

6.       On March 25, 2020, the government filed Answers approximately 300 pages in length Answer and emailed copies to appointed counsel.

7.       Pursuant to Rule 15(a), and as a matter of course, Mr. Garcia and Mr. Snarr have 21 days from service of the government's Answer to amend their § 2255 pleadings as a matter of course.[6]

8.       Pursuant to this Court's scheduling order, Mr. Garcia and Mr. Snarr have until May 29, 2020 to file pleadings in reply to the government's Answers.

---

[3] *See Garcia*, 13-723 Doc 31; *Snarr*, 13-724 Doc 23.
[4] *See Garcia*, 13-723 Doc 31; *Snarr*, 13-724 Doc 32.
[5] *See Garcia*, 13-723 Doc 105; *Snarr*, 13-724 Doc 80.
[6] Counsel acknowledge that depending upon its content, an amendment may need to satisfy Rule 15(c)'s relation back requirement but this is a separate question.

9.     On March 25, 2020, counsel conferred with the government about a proposed tolling of timing requirements due to restrictions imposed on counsel as a result of the national and statewide states of emergency declared to try to limit the spread of the COVID-19 virus and were advised that the government would oppose any proposed suspension or stay of filing deadlines.

**The current unprecedented state of emergency and global pandemic prevents counsel from safely or effectively developing the amended petitions and replies within the current deadlines**

10.     On March 25, 2020, President Trump declared that a major disaster exists in the State of Texas and authorized federal assistance to be sent to the State. In response, the Governor of Texas announced that "Texas is aggressively pursuing and implementing all necessary strategies to limit the impact of COVID-19." The President's and Governor's actions underline a series of increasingly devastating developments in what is the greatest public health emergency in over a century.   It is valuable to place the current position of the petitioners and counsel in context:

a.  On January 13, 2020, the World Health Organization (WHO) confirmed the first case of the novel coronavirus (COVID-19) to be detected outside of China, reinforcing its calls for active monitoring and preparedness in other countries.

b.  On January 3, 2020, the WHO declared the COVID-19 outbreak a Public Health Emergency of International Concern.

c.  On February 21, 2020, the WHO warned that the window of opportunity for containing the COVID-19 outbreak was "narrowing."

d.  On March 4, 2020, the Governor of California (where counsel Nester resides)

declared a state of emergency to help reduce the broader spread of COVID-19.[7]

e. On March 11, 2020, the WHO declared the outbreak of novel coronavirus (COVID-19) to be a pandemic.

f. On March 12, 2020, the Governor of Virginia (where counsel Lee resides) declared a state of emergency in response to the COVID-19 outbreak in Virginia.[8]

g. On March 13, 2020, the President of the United States declared a national state of emergency in response to the COVID-19 outbreak,[9] banning gatherings of more than ten people.

h. On March 18, 2020, the Surgeon General warned all Americans that each of us "should be acting as if we have the virus."[10]

i. On March 13, 2020, the Governor of Texas (where this Court is located, where counsel Hawkins resides, where Mr. Garcia and Snarr resided at the time of the offense and trial, and where Mr. Garcia resided prior to his incarceration) declared a State of Disaster in all Texas counties.[11] On March 24, 2020 Dallas County, where counsel Hawkins resides, issued a stay-at-home order.[12]

j. On March 13, 2020, the Governor of Louisiana (where counsel Lehmann resides) ordered the closure of all public schools. On March 20, 2020 the Mayor of New

---

[7]   https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/

[8]   https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-853537-en.html

[9]   https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

[10]   https://www.cnn.com/world/live-news/coronavirus-outbreak-03-18-20-intl-hnk/index.html.

[11]   https://gov.texas.gov/news/post/governor-abbott-holds-press-conference-on-coronavirus-declares-state-of-disaster-for-all-texas-counties

[12]   https://www.dallascounty.org/government/comcrt/jenkins/covid-19.php

Orleans (where counsel Lehmann resides) issued an immediate stay at home mandate.    On March 22, 2020, the Governor of Louisiana issued a stay-at-home order for the whole of Louisiana.    On March 24, 2020, President Trump declared that a major disaster exists in the state of Louisiana.

k. On March 19, 2020, the Governor of California (where counsel Nester resides) issued a stay-at-home order.

l. On March 23, 2020, the Governor of Virginia (where counsel Lee resides) ordered the statewide closure of schools and non-essential businesses, directed professional businesses to proceed by tele-work, and banned gatherings of more than ten people.[13] The City Council for Charlottesville (where counsel Lee resides) also has called for imposition of stay-at-home protocols.

m. On March 13, 2020, the Federal Bureau of Prisons (BOP) suspended visitation with inmates in its custody, including legal visits for thirty days.[14] Indiana, where federal death row is located (and where Mr. Garcia and Mr. Snarr reside), is currently subject to a stay-at-home order.[15]

n. The rates of persons testing positive for the virus have been growing in Louisiana, Texas, Virginia, California, nationally and internationally, as has the rate of fatalities. This means not only that the number of people being infected by the disease and dying as a result of the infection is increasing, but that the number of infections and death is itself growing making infection and death more likely with

---

[13] https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-855292-en.html
[14] https://www.bop.gov/resources/news/20200313_covid-19.jsp
[15] https://www.in.gov/gov/3232.htm

5

each passing day.

11.    According to definitions from the Centers for Disease Control and Prevention (CDC) each of Snarr's appointed counsel is in what the CDC considers a COVID-19 high-risk category.[16]

12.    Following the advice of public health and state and federal government authorities, everyone engaged in the representation of Mr. Garcia or Mr. Snarr is currently subject to a stay-at-home order or an order requiring work only from remote locations, and with significantly reduced resources.

13.    All four appointed counsel have children whose schools have been closed and who are in isolation at home with counsel. Three of appointed counsel have staff or family members who have been presumptively diagnosed or ordered to self-quarantine by medical experts due to exposure.

14.    On March 15, 2020, in an effort to slow the spread of the disease in the United States, the (CDC) published guidance recommending that

> …for the next 8 weeks, organizers (whether groups or individuals) cancel or postpone in-person events that consist of 50 people or more throughout the United States.   Events of any size should only be continued if they can be carried out with adherence to guidelines for protecting vulnerable populations, hand hygiene and social distancing.

**Exhibit D**, CDC's Notice Regarding Public Gatherings.[17] In a March 16, 2020, White House Press Briefing March 17, 2020, it was announced that gatherings of ten or more people should be

---

[16]                              https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fhigh-risk%2Fhigh-risk-complications.html
[17]https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-ready-for-covid-19.html

avoided.  *See*  https://abcnews.go.com/Politics/white-house-issues-guidelines-stopping-spread-coronavirus/story?id=69627340. The CDC recommends that older adults and persons of any age with chronic medical conditions postpone nonessential travel. https://www.cdc.gov/coronavirus/2019-ncov/travelers/index.html

15.    As the White House announced on March 16, 2020, the WHO and CDC agree that the number of COVID-19 cases is far greater than currently reported because of testing and reporting delays, strict criteria for testing, and other considerations. Every report of infection numbers lags by several days. Moreover, Surgeon General Jerome Adams confirmed on March 16, 2020 that the United States has the same number of cases that Italy had two weeks ago.[18] Italy currently has the second most cases in the world (after China), and its entire population is now in quarantine.[19]

16.    The virus has been described by world leaders and academics as a once-in-a-hundred year event[20] and the worst global health threat we have faced in a century.[21]

17.    In normal circumstances, the filing of the government's answer would trigger

---

[18]    According to the WHO, on Sunday, March 15, 2020, Italy reported 21,157 confirmed COVID-19 cases and 1,441 deaths, and on Monday, March 16, 2020, Italy reports 55,155 confirmed COVID-19 cases and 2,303 deaths. (www.euro.who.int/en/countries/italy).   In other words, reported cases in Italy more than doubled overnight.
          As of Friday, March 13, 2020, the CDC reported that as of March 12, 2020, there were 1,629 total COVID-19 cases in the United States with 41 deaths.   On March 16, 2020, the CDC reported that 3,487 COVID-19 cases had been confirmed nationally, along with 68 deaths as of Friday, March 13, 2020. CDC data published March 16, 2020, showed the number of cases in the United States doubled overnight from Thursday, March 12, to Friday, March 13. As of noon on March 17, 2020, the CDC reported 4,226 confirmed COVID-19 cases. *See* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcases-in-us.html
          It should be noted that the CDC appears to only be counting confirmation numbers from government labs and not counting cases confirmed by testing done by private labs, so the actual number of COVID-19 cases is almost certainly significantly higher than reported by the CDC.
[19]          https://www.pharmaceutical-technology.com/features/covid-19-italy-coronavirus-deaths-measures-airports-tourism/
[20]          https://www.reuters.com/article/us-health-coronavirus/stunned-world-grapples-with-once-in-100-year-coronavirus-battle-idUSKBN21522O.
[21]  https://www.cnn.com/videos/tv/2020/03/15/yuval-noah-harari-amanpour-cnn-coronavirus.cnn.

certain responsibilities on Petitioners and their counsel.   Under the Court's scheduling orders, Petitioners' replies would be due May 29, 2020.   Petitioner's right to amend as a matter of course has also been triggered by the filing of the government's answer.   Fed. R. Civ. Pro. 15.   The statute of limitation for filing new claims for which impediments to raising previously have been removed or factual support for the claim could not have been discovered by the exercise of due diligence also would run during this period. 28 U.S.C. § 2255(f).   Each of these responsibilities imposes on counsel the likely need for investigation and consultation with the Petitioners. Investigation in this case would necessitate travel and direct contact with witnesses, including a number of witnesses in the custody of the BOP. But travel for the purpose of investigating Petitioners' case run contrary to directives and restrictions set out by every medical expert or advisor or political authority who has responded to the pandemic.   Contact with Petitioners and all inmates in custody of the BOP and virtually every prison system in the country is currently prohibited.   Social interaction with persons for non-essential purposes such as investigation in these proceedings has been discouraged in the strongest terms by medical experts, as well as public health and governmental authorities, and in some settings or between some populations is prohibited.   Simply put, proceeding with this case as if circumstances were anything like normal, or in a manner that imposes standard duties, timelines, and responsibilities on counsel and Petitioner, would jeopardize the health and safety of all participants, their families and those with whom they interact.[22]

---

[22] On March 16, 2020, this Court entered General Order 20-03 in response to the recent outbreak of the novel coronavirus throughout the United States as well as in the State of Texas. http://www.txed.uscourts.gov/sites/default/files/goFiles/GO%2020-03%20%20COVID-19_signed.pdf.
The Order was prompted by the Court's concern for the health of all persons involved in judicial proceedings. The Order continued currently-scheduled trial proceedings, directed counsel to seek relief from other court proceedings as they deem appropriate, and afforded presiding judges the "maximum discretion to handle their respective dockets . . . as they deem best considering the totality of the circumstances." *Id.*

18.     In current circumstances as well as in those anticipated in the weeks to come, Petitioners' counsel cannot conduct the investigation and interviews necessary for adequate responses to the government's answer.   It would be irresponsible and unsafe—and in most cases contrary to legal restrictions—to ask counsel or investigators to attempt witness interviews contrary to the CDC's "social distancing" recommendations and instructions to limit interpersonal contact.   Moreover, potential sources of assistance are further prohibited from contact due to high-risk status identified by the CDC.   Extensive travel would be required of everyone who might be involved in investigating Petitioners' cases.   An adequate defense investigation as contemplated by the Constitution, federal statutes and federal and professional standards of practice cannot be conducted in the current national crisis.

19.     Furthermore, even the research and writing involved in preparing an amended petition or reply is heavily constrained.   All counsel are under stay-at-home or tele-work orders and working in vastly less efficient or well-resourced circumstances.   Counsel are unable to perform as many hours or as efficiently as might normally be expected.   Each counsel has extensive and immediate professional responsibilities in addition to the representations of Mr. Garcia and Mr. Snarr.

20.     Counsel Nester is the head of the Federal Defenders of San Diego, an office consisting of 140 individuals and over 60 attorneys.   Her office has the second largest caseload in the country.   Due to the COVID-19 virus and the orders of the Governor of California and the Chief District Judge for the Southern District of California, 95 percent of her office is working remotely and Ms. Nester is consumed by constant communication among the District Judges, Magistrate Judges, the U.S. Attorney, the U.S. Marshal, the leadership of U.S. Probation, the wardens and staff of the jail facilities, Clerk of Court, the national defender organization, her

management team, her trial team supervisors, her staff, and her own two capital case teams.  Furthermore, due to being in a high-risk health category, Ms. Nester will not be able to travel to the office of the Federal Public Defender in Utah, where the thousands of documents in this case are located, until the CDC recommends it is safe to travel once again.

21.     Counsel Hawkins is the Federal Public Defender for the Northern District of Texas. He is managing a staff of 72 people stretching from Dallas to Amarillo, and is similarly heavily occupied with the logistical arrangements involved in responding to the COVID-19 crisis, preserving the safety of his staff and managing migration of the judicial system in his jurisdiction to tele-work.

22.     All of counsel Lee's clients are people sentenced to death at various stages of proceedings. In addition to managing office and staff and transition in this crisis, he is responsible for managing several teams representing death-sentenced clients at varying stages of proceedings in state and federal courts.

23.     Counsel Lehman is a Senior Capital Attorney responsible for managing multiple teams representing capital defense clients in trial proceedings as well as other stages of litigation.

24.     Petitioners cannot assist in their representation without the ability to meaningfully consult with counsel.    *See Ching v. Lewis*, 895 F.2d 608 (9th Cir. 1990) (holding that "a prisoner's right of access to the courts includes contact visitation with his counsel … the policy of denying a prisoner contact visits with his attorney prohibits effective attorney-client communication and unnecessarily abridges the prisoner's right to meaningful access to the courts."); *Dreher v. Sielaff*, 636 F.2d 1141 (7th Cir. 1980) ("an inmate's opportunity to confer with counsel is a particularly important constitutional right which the courts will not permit to be unnecessarily abridged"); *Bounds v. Smith*, 430 U.S. 817 (1977) (the Fourteenth Amendment guarantees meaningful access

10

to courts); *Procunier v. Martinez*, 416 U.S. 396, 419 (1974) (overruled in part on other grounds) (substantial and unjustifiable burdens on the right of access to courts are invalid; "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys.").

**This is a capital case in which heightened concern for accuracy and procedural fairness is compelled**

25.    The Eighth Amendment requires a heightened need for reliability in the determination that a death sentence is the appropriate punishment in a specific case. *Caldwell v. Mississippi*, 472 U.S. 320, 323, 341 (1985); *Monge v. California*, 524 U.S. 721, 732 (1998) (Court has "recognized an acute need for reliability in capital sentencing proceedings").

26.    This is a function of the qualitative difference between a death sentence and even the longest term of imprisonment, which requires a corresponding difference in the need for reliability in capital cases.    *Lockett v. Ohio*, 438 U.S. 586, 603 (1978).

27.    Capital proceedings must be policed at all stages by an "especially vigilant concern for procedural fairness and for the accuracy of factfinding."    *Monge*, 524 U.S. at 732 quoting *Strickland v. Washington*, 466 U.S. 668, 704 (1984) (Brennan, J., concurring in part and dissenting in part)).

28.    Capital cases require heightened procedural protections and, by their nature, justify a departure from the courts' usual practice in non-capital cases.    "Time and again the [Supreme] Court has condemned procedures in capital cases that might be completely acceptable in an ordinary case. See, e. g., *Bullington v. Missouri*, 451 U.S. 430 (1981); *Beck v. Alabama*, 447 U.S. 625 (1980); *Green v. Georgia*, 442 U.S. 95 (1979) (*per curiam*); *Lockett v. Ohio*, 438 U.S. 586 (1978); *Gardner v. Florida*, 430 U.S. 349 (1977); *Woodson v. North Carolina*, 428 U.S. 280 (1976)."    *Barefoot v. Estelle*, 463 U.S. 880, 913-914 (1983) (Marshall J., dissenting).

11

29.    Furthermore, "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." *Caldwell*, 472 U.S. at 329.

30.    In light of the heightened concern for procedural fairness and adequate scrutiny of any legal claims in capital cases, the need to suspend the current deadlines is all the more overwhelming. The interests of the government will not be adversely impacted by tolling these proceedings in this crisis; in fact, granting the request is consistent with all orders and recommendations of federal and state government and public health authorities.

**The Rule 15 and reply filing deadlines should be tolled for thirty days to preserve Petitioners' rights to safe and effective representation in this capital case**

31.    With the existing global pandemic and growing impact of COVID-19 in every jurisdiction involved in this case, Petitioners respectfully request that the filing deadlines under Rule 15 and this court's scheduling order be tolled for 30 days.   During this time, no time will be counted against either party with regard to any deadline set by the court or the federal rules of civil procedure. Such action is equitable, and necessary to maintain Petitioners' rights to adequate representation and to maintain the integrity of these proceedings.   It also is consistent with the duty of the Court and the parties to contribute to the protection of the health and safety of all involved in these proceedings as well as the public at large.

32.    Given the unknowable future, the uncertain estimates of how long this global pandemic may last, and the known variables existing today prevented adequate progress in of these proceedings, *e.g.*, no access to clients, an inability to conduct investigation, a daily escalation in the spread of the virus, including fatalities, and in government-ordered and advise restrictions on normal public activities), Petitioner respectfully suggests the proposed course is the only

responsible course of action.

33.    It may be that after 30 days the situation will have eased sufficiently to allow the deadlines to proceed in the regular course or it may be that an additional, measured, request will be needed if matters have not improved or perhaps even deteriorated.

34.    Given that the government had over 1,850 days (five years) from the filing of the § 2255 motions in this case and the filing of their Answer, it is submitted that tolling the defense briefing schedule for 30 days in the midst of a once in a century state of national disaster is a measured and proper response.

WHEREFORE, Mr. Garcia and Mr. Snarr ask this Court to enter the proposed order suspending and tolling deadlines for all purposes, including deadlines set out by Rule 15 for 30 days. Thirty days after entry of the proposed order, deadlines under Rule 15 and deadlines previously set by the Court will begin to run for their full allotted time period.

Respectfully Submitted,

| | |
|---|---|
| */s/ Christine Lehmann*<br>Christine Lehmann<br>Louisiana Capital Assistance Center<br>636 Baronne Street<br>New Orleans, LA 70113<br>(504) 558-9867<br>(504) 558-0378 (fax)<br>Louisiana Bar #28122<br>*Counsel for Mr. Garcia*<br><br>/s/ *Jason D. Hawkins*<br>Jason D. Hawkins<br>Federal Public Defender<br>Northern District of Texas<br>525 South Griffin Street, Suite 629<br>Dallas, Texas 75202<br>(214) 767-2746<br>(214) 767-2886 (fax)<br>Texas Bar No. 00795763 | */s/ Robert Lee*_____<br>Robert Lee<br>2421 Ivy Road, Suite 301<br>Charlottesville, Virginia 22903<br>(434) 817-2970<br>(434) 817-2972 (fax)<br>roblee@vcrrc.org<br>*Counsel for Mr. Snarr*<br><br>/s/ *Kathryn N. Nester*<br>Kathryn N. Nester<br>Federal Defenders of San Diego, Inc.<br>225 Broadway, Suite 900<br>San Diego, CA   92101<br>(619) 234-8467<br>(619) 687-2666 (fax)<br>Kathy_Nester@fd.org<br>*Counsel for Mr. Snarr* |

| *Counsel for Mr. Garcia* | |
|---|---|

## CERTIFICATE OF SERVICE

This is to certify that, on this March 26, 2020, the above Motion was filed with the Court via the ECF electronic filing system. Counsel for the Government was served with a copy of this document through ECF.

*/s/ Robert Lee*_____
*Counsel for Mr. Snarr*


*/s/ Christine Lehman*_____
*Counsel for Mr. Garcia*


## CERTIFICATE OF CONFERENCE

This is to certify that, prior to filing the above submission with the Court, counsel conferred with counsel for the government regarding this submission in compliance with Local Rule CV-7(h); the Government does oppose this Motion.

*/s/ Robert Lee*_____
*Counsel for Mr. Snarr*

*/s/ Christine Lehman*_____
*Counsel for Mr. Garcia*

14