IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

EDGAR BALTAZAR GARCIA, #28132-177,  §
                                     §
            *Petitioner,*             §
                                     §
vs.                                  §            CIVIL ACTION NO. 1:13-cv-723
                                     §            CRIM. NO. 1:09-CR-00015(02)
UNITED STATES OF AMERICA,            §
                                     §
            *Respondent.*             §

<u>ORDER DENYING MOTION FOR DISCOVERY</u>

Before the court is Movant Edgar Baltazar Garcia's ("Movant") Joint Motion and Incorporated Memorandum for Leave to Conduct Discovery ("Motion for Discovery") (doc. #162),[1] the Government's Response to Joint Motions for Discovery (the "Response") (doc. #170), and Movant's Reply to Government's Opposition to Motion for Discovery Related to Recusal (the "Reply") (doc. #173). This matter was referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Movant seeks discovery to support his Joint Motion and Memorandum in Support of Motion for Recusal ("Motion for Recusal"). (Doc. #160.) Movant asserts that if the facts are developed as he believes, "he may be able to demonstrate that he is entitled to the relief sought"—*i.e.*, the recusal of United States District Judge Marcia A. Crone along with all other Eastern

---

[1] Despite titling his pending motion "*Joint* Motion and Incorporated Memorandum for Leave to Conduct Discovery," Movant and Mark Isaac Snarr ("Snarr") filed separate motions regarding discovery in their respective habeas proceedings. *See Edgar Baltazar Garcia v. United States of America*, Cause No. 1:13cv-cv-723 ("No. 1:13-cv-723"), (doc. #162); *Mark Isaac Snarr v. United States of America*, Cause No. 1:13-cv-724, (doc. #150). Accordingly, the court will rule on the motions separately.

1

District of Texas judges from deciding the merits of his federal habeas petition.  (Doc. #162 at 1.)

The Government is opposed.[2]

Through his Motion for Discovery, Movant seeks leave to issue subpoenas and conduct depositions of David Maland, Beth Harper, Terri Splawn, and Michael Sutera regarding the timing, length, and content of meetings between Judge Crone and court staff or contractors responsible for jury selection.  (Doc. #162 at 7.)  He also seeks additional information regarding the 2010 Master Jury Wheel.  For the reasons discussed below, Movant's motion for discovery is denied.

I.    Background

On January 21, 2009, a federal grand jury returned a one-count indictment against Mark Isaac Snarr ("Snarr") and Movant charging them with murdering a fellow inmate at the U.S. Penitentiary in Beaumont, Texas, in violation of 18 U.S.C. §§ 1111 and 2.  *United States of America v. Snarr, et al.*, Cause No. 1:09-cr-015 ("No. 1:09-cr-015") (doc. #7).  The indictment provided notice of special findings for both Snarr and Movant, and on February 9, 2009, the Government filed notice of its intent to seek the death penalty against both.  (No. 1:09-cr-015, doc. #19.)

On April 6, 2010, jury selection began, which spanned more than two weeks[3] and the court allowed the parties to question the venire persons individually and raise challenges to each venire

---

[2] The Government urges that the Motion for Discovery is frivolous as Movant's claims under the Jury Service and Selection Act ("JSSA") and the fair-cross-section of community claims under the Sixth Amendment are both legally and procedurally barred.  (Doc. #146 at 274–87; Doc. #134 at 49–62.)  If the court finds that the JSSA and Sixth Amendment claims are legally and procedurally barred, "issues about how the wheel was populated—or what, if anything, the court knew about the process—will never be relevant.  (Doc. #170 at 5.)

[3] General *voir dire* took place on April 6, 2010, and April 7, 2010 (No. 1:09-cr-015, doc. ##383–384).  Individual *voir dire* was conducted from April 12, 2010, through April 26, 2010 (*Id.*, doc. ##385–395).

person's fitness to sit as a petit juror on Movant's federal death penalty trial.[4]  (No. 1:09-cr-015, doc. #383.)  A petit jury of twelve jurors and five alternates were chosen.  (*Id*., doc. #396 at 19.)

On May 7, 2010, the jurors deliberated and returned guilty verdicts against both Snarr and Movant for the fellow inmate's murder.  (*Id*., doc. #303.)  On May 12, 2010, the petit jury unanimously concluded that Snarr and Movant were eligible for the death penalty and the court began the selection phase of Snarr and Movant's trial.  (*Id*., doc. #317.)  On May 24, 2010, the jury unanimously selected the death penalty as the appropriate punishment for both Snarr and Movant.  (*Id*., doc. ##339, 350.)  The court thereafter sentenced Snarr and Movant to death in accordance with the jury's determination.  (*Id*., doc. #352.)

Snarr and Movant appealed their convictions and death sentences.  The United States Court of Appeals for the Fifth Circuit affirmed the convictions and sentences.  *United States v. Snarr*, 704 F.3d 368, 377 (5th Cir. 2013), *cert. denied*, 571 U.S. 1195 (2014).

On February 24, 2015, Movant filed his Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to Section 2255 ("Motion to Vacate").  (No. 1:13-cv-723, doc. #31.)  Movant filed his amended Motion to Vacate six and a half years later, in November 2021.  (*Id*., doc. #136.)  The Government filed its Amended Response in Opposition to Motion for Collateral Relief pursuant to 28 U.S.C. § 2255 ("Amended 2255 Response") (*Id*., doc. #146) in February 2022.  Movant filed his Reply to Government's Amended Answer to Motion for Collateral Relief Pursuant to 28 U.S.C. § 2255 ("2255 Reply") in June 2022.  (*Id*., doc. #158.)  Movant's Amended Motion to Vacate is pending before the court.  (*Id*., doc. #136.)

---

[4] The court notes that no objection was raised to the selection of venire persons from the relevant jury wheel at any time before, during, or after the jury selection process.  (*Id*., doc. ##385-395.)

3

II.      Discussion and Analysis

    A.      Standards

Section 2255 proceedings are governed by the Federal Rules of Civil and Criminal Procedure to the extent that these rules are not inconsistent with any statutory provision or any rule of the *Rules Governing Section 2254 and 2255 Cases*. *See* Rule 12, *Rules Governing Section 2254 and 2255 Cases*; *see also United States v. Saenz,* 282 F.3d 354, 355 (5th Cir. 2002) ("Rule 12 ... authorizes district courts to apply the Federal Rules of Civil Procedure when appropriate and not inconsistent with applicable statutes or rules."). A § 2255 movant "may invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *United States v. Trevino*, 554 F. App'x 289, 295 (5th Cir. 2014) (quoting *United States v. Webster,* 392 F.3d 787, 801 (5th Cir. 2004) (quoting *Rector v. Johnson,* 120 F.3d 551, 562 (5th Cir. 1997) (internal quotation marks omitted))).

As the Supreme Court has noted before, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997)); *see also Rafiq v. United States*, No. 4:19-cv-050-O, 2020 WL 7009640, at *11 (N.D. Tex. Nov. 9, 2020). The requesting party "must provide reasons for the request" and "include any proposed interrogatories and requests for admission and must specify any requested documents." *Lincks v. United States*, No. 3:20-cv-1603, 2021 WL 3828154, at *1 (N.D. Tex. Aug. 27, 2021) (citing *Section 2255 Rules*, Rule 6(b)).

Rule 6(a) of the *Section 2255 Rules* allows discovery if a judge finds "good cause" to conduct discovery. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.) (noting that discovery is to be permitted "only if and only to the extent that the district court finds good cause" under the

analogous *Rules Governing Section 2254 Proceedings in the United States District Courts*), *cert. denied*, 531 U.S. 957 (2000). Good cause is present when a section 2255 motion "establishes a *prima facie* case for relief." *Id.* (quoting *Harris v. Nelson*, 394 U.S. 286, 290 (1969)); *see also United States v. Fields*, 761 F.3d 443, 478 (5th Cir. 2014) (citing *Bracy*, 520 U.S. at 908–09), *cert. denied*, 576 U.S. 1004 (2015). A petitioner demonstrates "good cause" for discovery under Rule 6(a) "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy,* 520 U.S. at 908–09 (internal quotation marks omitted).

Section 2255 was not intended to permit endless litigation on matters already resolved, and for this reason, discovery is properly limited to resolving factual disputes which, if resolved in the movant's favor, would entitle him to relief. *See Murphy*, 205 F.3d at 814. Furthermore, conclusory allegations are insufficient. *Id.* (citing *United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004)) ("Conclusional allegations are insufficient to warrant discovery; the petitioner must set forth specific allegations of fact"). Rule 6(a) of the *Rules Governing § 2255 Proceedings* "does not authorize fishing expeditions." *Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir. 1994). "[T]he district court's decision regarding the availability of discovery is ... committed to the sound discretion of the district court and is reviewed under the abuse of discretion standard." *Clark v. Johnson,* 202 F.3d 760, 765–66 (5th Cir. 2000).

B.    No *Prima Facie* Case for Relief

As good cause for his Motion for Discovery, Movant contends that discovery concerning Judge Crone's partiality or appearance of partiality is vital to his jury selection claims, Jury Selection and Service Act ("JSSA"), 28 U.S.C. §§ 1861–1878, *et seq*., and his Sixth Amendment

fair-cross section of the community guarantee claims regarding the November 2009 jury wheel[5] from which the jury venire was chosen. (Doc. #162 at 2.) More specifically, Movant seeks discovery:

> (1) tending to show what Judge Crone could reasonably have been expected to have known at the time of trial or would now be reasonably expected to know about the improper jury selection method and the response of court staff to the investigation of the jury selection method, and
>
> (2) tending to show that Judge Crone has a long-standing relationship with court staff Beth Harper, David Maland, and Terri Splawn, and with contractor David Sutera and his firm.

(Doc. #162 at 3 and 8.)

Movant's first discovery request is facially speculative and conclusory—*e.g.*, "could reasonably have been expected to have known." Movant provides no facts or other support for his speculation that Judge Crone should have known or could have known of any potential error in the 2009 jury wheel. *Webster*, 392 F.3d at 802.

Moreover, whether Judge Crone had or has a long-standing relationship with any court employee does not prove or disprove whether she can preside over Movant's habeas petition with impartiality. Movant fails to provide any concrete basis or facts that move his requests from speculative to the realm of reasonable and thereby demonstrate that he is entitled to relief. "Conclusional allegations are insufficient to warrant discovery; the [movant] must set forth specific allegations of fact." *Webster*, 392 F.3d at 802 (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, 513 U.S. 1192 (1995)). Because Movant's allegations are speculative and conclusory, they do not give "reason to believe that the petitioner may, if the facts

---

[5] Movant refers to this jury wheel as the 2009 Beaumont Special Selection [Wheel] in his amended Motion to Vacate. (Doc. #136 at 461–502.)

are fully developed, be able to demonstrate that he is . . . entitled to relief." *Fields*, 761 F.3d at 480 (quoting *Bracy*, 520 U.S. at 908–09). As such, he does not show "good cause" as required under Rule 6(a).

      C.      <u>Discovery is Unwarranted as Movant's Claims Fail on the Merits</u>

      1.      <u>Procedural Default</u>

In a habeas corpus case, discovery must relate solely to a specifically alleged factual dispute, not to a general allegation. *Clark v. Johnson*, 202 F.3d 760, 767 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). Movant states that in Claim XIII of his amended Motion to Vacate, he contends that the wheel and venire in his criminal case were selected in violation of the Eastern District Jury Plan, the JSSA, and the Sixth Amendment fair cross-section guarantee. (Doc. #162 at 2.) He contends that he "seeks to show cause for his failure to bring his jury claims prior to trial and points to the alleged misrepresentations of court staff prior to trial as to the manner in which the venire was being assembled." (Doc. #162 at 5.)

The Government asserts that Movant's discovery requests are baseless as the JSSA, and fair cross-section claims are legally and procedurally barred. (Doc. #170 at 5). Through this requested discovery, Movant apparently seeks a means to overcome the alleged procedural default[6] for not raising his JSSA and fair cross-section guarantee claims prior to jury selection.

To overcome the procedural default, Movant must show either (A) cause and prejudice or (B) actual innocence. *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019) (per curiam); *see also United States v. Frady*, 456 U.S. 152, 167–68 (1982) (holding that procedural default is applicable to § 2255 motions); *Willis*, 273 F.3d at 596 (same). To establish cause, the movant "must show

---

[6] Procedural default occurs when a defendant raises an issue in his § 2255 motion, other than ineffective assistance of counsel, that he could have raised on direct appeal but failed to do so. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

that some objective factor external to the defense impeded counsel's efforts to comply with the [relevant] procedural rule." *Davila v. Davis*, 582 U.S. 521, 528 (2017) (quotation omitted). "A factor is external to the defense if it cannot fairly be attributed to" the movant. *Id.* (quotation omitted). The Supreme Court has not provided "an exhaustive catalog of such objective impediments to compliance with a procedural rule," but "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials, made compliance impracticable, would constitute cause." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (quotation omitted).

To establish prejudice, a movant must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542, 545–46 (5th Cir. 2003). Even if a movant fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default by showing that application of the default would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a movant must prove that "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with *new*, reliable evidence—that was *not* presented at trial—and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman*, 188 F.3d at 644 (citations omitted) (emphasis added).

Movant contends that there was a factual impediment—the court and its staff—that prevented him from timely raising his JSSA and fair cross-section guarantee claims prior to trial. (Doc. #162 at 5.) Movant's argument is specious. In Judge Crone's Memorandum and Order (doc. #174 at 4–5, fn.4, and 16), the Order explains that Movant's trial counsel: (1) attended the

8

October 30, 2009, status hearing conference regarding the discussion of the creation of the jury wheel and the jury questionnaire, (2) had the opportunity to ask questions regarding the process, (3) were offered copies of the Eastern District's jury plan, (4) had copies of the 308 questionnaires of the venire panel, (5) had the opportunity to personally observe and question each venireman individually, and (6) were aware of the eight married couples in the venire pool. Movant does not explain what relevant information was concealed from trial counsel by the court and/or its staff that seemingly existed before the trial began and which prevented trial counsel from objecting to or raising a JSSA or fair cross-section guarantee claim prior to the swearing in of the jury for Movant's criminal trial, or which prevented him from raising the issue in his direct appeal before the appellate court.

Even if Movant could establish cause, he fails to establish prejudice—*e.g.*, that but for the alleged error in the creation of the jury wheel, the outcome of the proceeding would have been different. Movant did not pursue this issue on direct appeal; as such, he clearly did not raise the issue before the Fifth Circuit. He has not shown cause for his failure to pursue and appeal his jury issue; nor has he shown that he would suffer prejudice if the court applied default in this case. As such, he cannot overcome procedural default in this manner. Further, he has not shown that he did not commit the crime of his conviction; hence, he may not avail himself of the fundamental miscarriage of justice exception to the procedural default rule regarding this issue. Ultimately, Movant's request for discovery fails on the merits.

2. <u>Eastern District Jury Plan</u>

Regardless of Movant's inability to overcome procedural default, Movant also contends that Judge Crone has personal bias or personal knowledge because of her "role and responsibility as supervisor of the jury selection process," (doc. #160 at 17), and as such, he should be allowed

to conduct discovery.  Once again, Movant's conclusory allegations fail to show that he would ultimately be entitled to relief.  *Fields*, 761 F.3d at 480 (quoting *Bracy*, 520 U.S. at 908–09) (explaining that movant's allegations must give "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.").  He fails to establish "good cause" as required under Rule 6(a).

While the Eastern District's jury plan indicates that the court has oversight of the court staff and process, the Clerk of Court is the one tasked with managing the process of populating the wheel, selecting, and retaining a contractor, and supervising those involved.  (Doc. #160-2 at 3.) The Eastern District Jury Plan explains the process as follows:

> Section 3. Management and Supervision of Jury Selection Process
>
> The clerk of the court shall manage the jury selection process.  The clerk shall act under the supervision and control of the judges of this district.
>
> This district, by adoption of this plan, has elected to operate the jury selection process under a fully automated, electronic data processing system.

(Doc. #160-2 at 3.)  The Jury Plan further provides that the source list for populating the jury wheel is the random selection from the Master Registration Lists maintained by the Secretary of the State of Texas of all persons registered to vote in the most recent federal general election held every two years.  Eastern District of Texas General Order 09-7.  Judge Crone is not personally involved in this fully automated process of creating a jury wheel, has no role in selecting a contractor to perform this task, and had no knowledge of the identity of the contractor retained or the methodology utilized prior to the current filings.  She does not supervise the process and does not provide any instruction as to how the jury wheel will be created.  The Jury Plan is self-explanatory as to how the process is accomplished.  (*Id.*)  Finally, the Government is correct that Judge Crone was not the Chief Judge of the Eastern District of Texas at the time of trial and has never been the

Chief Judge of the District, so she would not have received copies of the certificates prepared by Sutera Data Systems—the contractor actually responsible for creating and selecting names for the jury wheel at issue. (Doc. #169 at 11.)

Moreover, Movant's requested discovery will not establish that there has been a substantial violation of the Eastern District's Jury Plan. Whether there has been a substantial violation depends on whether two important general principles have been frustrated: 1) random selection of juror names from the voter lists of the district or division in which court is held; and 2) a determination of juror disqualifications, excuses, exemptions, and exclusions based on objective criteria only. *United States v. Schmidt*, 711 F.2d 595, 600 (5th Cir. 1983). Violation of a local plan is analyzed in the same manner as the JSSA, that is, by a determination of whether any of the JSSA's policies were frustrated.[7] *Id.*

Furthermore, Movant has no constitutional right to a randomly selected jury. *United States v. Nelson*, 718 F.2d 315, 319 (9th Cir. 1983) (citing *United States v. Hawkins*, 566 F.2d 1006, 1014 (5th Cir.), *cert denied*, 439 U.S. 848 (1978)). Movant's arguments regarding the alleged participation of Judge Crone in the jury selection process do not create a specifically alleged factual dispute, that if fully developed, would demonstrate that he is entitled to relief.

---

[7] The JSSA seeks to ensure that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service. *United States v. Bearden*, 659 F.2d 590, 593 (5th Cir. 1982); 28 U.S.C. § 1861. The JSSA provides that each district court shall devise a written plan to achieve the twin objectives of nondiscrimination and opportunity of service. *Id*. at 593–94. The JSSA also sets out the exclusive methods by which non-compliance may be challenged. *Id*. at 595; *see* § 1867(e).

### 3.    Relationship with Court Staff

Likewise, Movant's arguments regarding the court and its staff's relationship are lacking.[8] Movant implies that Judge Crone's professional relationship and dealings with court staff are improper and constitute engaging in "*ex parte*" communications with court employees.[9] He does not present any legal support for his assertion that the court and its employees are engaging in "*ex parte*" communications when they discuss court business. The court is not a party to the litigation, nor are the court employees. Importantly, Movant fails to identify a comment by Judge Crone in any off-the-record communication with the court's staff about the venire in this case that was of extrajudicial origin, that places the offending comment into the context of the entire trial and would give the appearance of partiality to a reasonable and objective person, who knows all the facts. *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003), *cert. denied*, *sub. nom. Thompson v. Chojnacki,* 541 U.S. 935 (2004). Movant's conclusory allegations do not provide the type of factual basis required to establish that he should be entitled to conduct discovery under Rule 6(a).

Even assuming that Movant was permitted to conduct depositions of court staff or even Judge Crone, regarding their professional interactions and relationships, he fails to explain how this information would resolve any factual dispute or establish that his rights were violated under the JSSA, or the Sixth Amendment as asserted in his amended Motion to Vacate. The fact that

---

[8] Movant identifies former Clerk of Court David Maland ("Maland"), former Operations Manager Terri Splawn ("Splawn"), and current Jury Coordinator Harper as the three court employees in question. Maland and Splawn both worked in Tyler, Texas, while employed by the court, while Harper was assigned to Beaumont. Judge Crone is not related to Maland or Splawn and has no personal relationship with them. (Doc. #174 at 19 fn.13.) Harper works in her separate office within the courthouse and has never worked in or near Judge Crone's chambers. (*Id.*). Judge Crone and Harper are not related, are not neighbors, did not go to school together, have no personal relationship, and do not socialize. (*Id.*).

[9] Black's Law Dictionary defines "*ex parte*" as "Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested; of or relating to court action taken by one party without notice to the other . . . ." *Ex Parte*, BLACK'S LAW DICTIONARY 517 (8th ed. 1999). The court is not a party to Movant's litigation and the term "*ex parte*" is not appropriately used by Movant.

12

any of these individuals were cordial with Judge Crone is for all purposes irrelevant to the charges in the indictment for which Movant was convicted and sentenced and does not establish that the wheel and venire were flawed resulting in a substantial violation of his JSSA and fair cross-section guarantee rights.  He fails to show that he is entitled to relief as required in *Bracy* and *Fields*. *Fields*, 761 F.3d at 480 (quoting *Bracy*, 520 U.S. at 908–09) (explaining that movant's allegations must give "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.").

4.      <u>Judge Crone's knowledge is not discoverable</u>

Movant indicates that he seeks discovery from Judge Crone, through voluntary disclosure, regarding what she learned about the creation of the use of Special Wheels in capital cases in the Eastern District, the assembly of the Beaumont Special Selection, the assembly of the venire to be used in Movant's trial, and habeas counsel's requests for jury data and information related to jury selection, etc.  (Doc. #162 at 9.)  Judge Crone's knowledge of these matters, if any, are not discoverable.

To ensure the finality of judgments, judges have long been barred from testifying to impeach their own verdicts.  "[T]he finality and integrity of judgments would be threatened by a rule that enabled parties to attack a judgment by probing the mental processes of a judge." *Washington v. Strickland*, 693 F.2d 1243, 1263 (5th Cir. 1982), *rev'd on other grounds*, 466 U.S. 668 (1984).  In addition to ensuring the finality of judgments, protecting judges from the post hoc probing of their mental processes also ensures the integrity and quality of judicial decision-making. Federal and state courts faced with requests to question judges or their law clerks regarding judicial deliberations have underscored the importance of protecting that process, not just for the sake of the judge's personal interests, but to ensure the quality and integrity of decision-making that

13

benefits from the free and honest development of a judge's own thinking and candid communications among judges and between judges and the courts' staff in resolving cases before them.

Aside from public policy considerations of why judges are not subject to discovery in their official duties as judges, and not as policy makers, Movant has not established that if he were to receive the discovery that he is requesting, that he would be able to demonstrate that he is entitled to relief regarding his claims. Movant's arguments regarding Judge Crone's knowledge of the jury selection process in the Eastern District of Texas do not create a specifically alleged factual dispute, that if fully developed, would demonstrate that he is entitled to relief. He further fails to explain how Judge Crone's knowledge of the jury selection process in the Eastern District would resolve any factual dispute or establish that his rights were substantially violated under the JSSA, or the Sixth Amendment as asserted in his amended Motion to Vacate. He fails to establish "good cause" as required under Rule 6(a).

### D. Discovery Requests are Foreclosed by the JSSA

Additionally, Movant's discovery requests are foreclosed by the JSSA. As discussed fully in the court's Order Denying Motion to Recuse (doc. #174 at 8–10), Movant's jury selection arguments are precluded by his failure to comply with the statutory mandates of 28 U.S.C. §§ 1867(a)[10] and (e).[11] There is no indication in the record of No. 1:09-cr-015 that Movant moved

---

[10] Section 1867(a) provides:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with provisions of this title in selecting the grand or petit jury.

28 U.S.C. § 1867(a).

[11] The JSSA mandates in § 1867(e) as follows:

14

to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the JSSA.  In fact, Movant acknowledges that he did not bring this jury claim prior to trial.  (No. 1:13-cv-723, doc. #160 at 1.)

The Fifth Circuit has explained that the JSSA "is to be strictly construed, and failure to comply precisely with its terms forecloses a challenge."  *United States v. Rosbottom*, 763 F.3d 408, 415 (5th Cir. 2014) (citing *United States v. Bearden*, 659 F.2d 590, 595 (5th Cir. Unit B, 1981), *cert denied*, *sub nom. Northside Realty Assoc., Inc., v. United States*, 456 U.S. 936 (1982)), *cert. denied*, 574 U.S. 1078 (2015).  Any claim under the JSSA must be brought no later than the beginning of *voir dire*.  *Rosbottom*, 763 F.3d at 415.

Congress used the plain language of "exclusive means" in Subsection (e) pertaining to the ability of a criminal defendant to challenge defects asserted under the JSSA.  "It is obvious that the commencement of *voir dire* is the cut-off point for challenges under the Act," *United States v. Price,* 573 F.2d 356, 361 (5th Cir. 1978); *see also United States v. Pofahl,* 990 F.2d 1456, 1466 (5th Cir.), *cert. denied*, *sub nom. Nunn v. United States*, 510 U.S. 898 (1993), both under its express terms and because the only remedy it provides is a stay in the proceedings until a jury can be selected in conformity with the statute.  28 U.S.C. § 1867(d) ("If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.").  The language infers that Congress did not intend criminal defendants to raise any JSSA

---

The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title.  Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin, or economic status in the selection of persons for service on grand or petit juries.

28 U.S.C. § 1867(e).

challenges in proceedings beyond jury selection. Because Movant failed to comply with 28 U.S.C. § 1867(a), he is foreclosed from raising a claim under the JSSA, per 28 U.S.C. § 1867(e). *See United States v. Ballard*, 779 F.2d 287, 295 (5th Cir.), *cert. denied*, 475 U.S. 1109 (1986); *United States v. Green*, 742 F.2d 609, 612 (11th Cir. 1984).

Moreover, Movant's discovery requests—regarding what Judge Crone possibly should have known regarding the creation of the jury wheel and her relationships with court staff (doc. #162 at 3 and 8)—are not designed to elicit information regarding whether the 2009 jury wheel was defective in some manner. Accordingly, Movant has failed to establish a showing of a *prima facie* case for relief regarding his JSSA claim. Movant's request to conduct discovery pertaining to his JSSA claim is denied.

E.     Movant Fails to Show He Is Entitled to Relief Under the Sixth Amendment

Movant also raises a challenge under the Sixth Amendment right to a venire pool selected from a jury wheel that represents a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 528 (1976). To state a fair cross-section of the community claim, he must show that a distinctive group is generally and systematically excluded from jury venires. *Timmel v. Phillips*, 799 F.2d 1083, 1086 (5th Cir. 1986); *see United States v. DeFries,* 129 F.3d 1293, 1301 (D.C. Cir. 1997) ("Underrepresentation of a cognizable group in a single venire, without evidence of a greater pattern, is insufficient to establish the 'systematic exclusion of the group' required by *Duren*[12] . . . . [F]rom a small sample size based on one venire it is difficult to determine whether the disparity is random or systemic." (citations omitted)); *Singleton v. Lockhart,* 871 F.2d 1395, 1399 (8th Cir.) ("Evidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion."), *cert. denied*, 493 U.S. 874 (1989); *United States v. Miller,* 771 F.2d 1219, 1228 (9th Cir. 1985)

---

[12] *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

16

(holding that the *Duren* Court's use of the plural when describing "venires" from which "juries" are selected indicated that a violation of the underrepresentation element cannot be premised on underrepresentation on a single jury venire).

Movant has not alleged a general and systematic exclusion of a distinctive group from jury venires in the Eastern District of Texas. Asserting that the special jury wheel utilized in his capital murder trial in 2010 excluded a distinctive group is not enough. "[I]n order to establish a *prima facie* case, it [is] necessary for petitioner to show that the underrepresentation of [a distinctive group], generally and on his venire, was due to their systematic exclusion . . ." *Timmel*, 799 F.2d at 1086 (quoting *Duren*, 439 U.S. at 366). Movant must demonstrate, then, not only that Hispanics and African Americans were not adequately represented on his jury venire but also that this was the general practice in other venires. "One incidence of a jury venire being disproportionate is not evidence of a 'systematic' exclusion." *Timmel*, 799 F.2d at 1087. Therefore, "a one-time example of underrepresentation of a distinctive group wholly fails to meet the systematic exclusion element in *Duren*." *Id*.; *see DeFries,* 129 F.3d at 1301; *Singleton,* 871 F.2d at 1399. As a result, Movant has failed to allege the necessary elements of a *prima facie* case to establish a Sixth Amendment violation regarding the venire pool. (Doc. #136 at 496-502.)

Moreover, Movant's discovery requests are not designed to elicit information regarding whether the Eastern District has generally and systematically excluded a distinctive group from jury venires. His stated discovery requests concerning what Judge Crone knew regarding the creation of the special jury wheel utilized in Movant's capital murder trial and the judge's relationship with particular court staff (doc. #162 at 3 and 8) would not show whether the Eastern District's jury wheel practices excluded a distinctive group from multiple jury venires. He concedes that he previously obtained documents related to the 2006, 2008, 2010, and 2012 Master

17

Jury Wheels and Qualified Wheels in his amended Motion to Vacate. (Doc. #136 at 469.) Despite Movant obtaining the records and making general comparisons between the 2009 jury wheel and the 2010 jury wheel in his habeas corpus arguments, Movant fails to show a *prima facie* case of underrepresentation of a distinctive group because of systematic exclusion in other venires. (Doc. #136 at 496–502.) Therefore, Movant has failed to make a *prima facie* showing of a right to relief regarding his Sixth Amendment fair cross-section of the community claims. Accordingly, Movant's has not established good cause and his request to conduct discovery pertaining to his Sixth Amendment claim is without basis.

F.     Motion for Discovery is Moot

Finally, Movant's request for discovery to support his motion for recusal based on alleged bias or partiality is moot. He contends that "the requested discovery is necessary for the adequate factual development of his motion for recusal." (Doc. #162 at 3–4). His stated purpose has been rendered immaterial. In a painstakingly detailed opinion, Judge Crone denied the motion to recuse. (Doc. #174.) As a result, Movant's discovery requests are moot. Even if Judge Crone had not already denied the motion to recuse, Movant's motion for discovery would be denied for the reasons set forth herein.

III.    Conclusion

Under the circumstances described above, Movant fails to demonstrate that he is entitled to discovery under Rule 6, *Section 2255 Rules*. Movant's conclusory allegations are an insufficient basis for the court to grant his Motion for Discovery. Furthermore, he fails to demonstrate good cause. It has long been recognized that Rule 6 does not "sanction fishing expeditions[.]" *Rector*, 120 F.3d at 562; *accord In re Robinson*, 917 F.3d 856, 865 n.14 (5th Cir. 2019), *cert. denied*, 522 U.S. 1120 (2020); *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) ("[W]e have made clear

that Rule 6 does not authorize fishing expeditions") (internal citation and quotation marks omitted).  Consequently, Movant's motion for discovery must be rejected.  It is therefore.

    **ORDERED** that Movant Edgar Baltazar Garcia's Joint Motion and Incorporated Memorandum for Leave to Conduct Discovery (doc. #162) is **DENIED**.

    **SIGNED this the 20th day of July, 2023.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE